UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW S. WIMBERLY,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>   Defendant. | Case No. CV 07-1952-JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I. SUMMARY**

On March 29, 2007, plaintiff Matthew S. Wimberly ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; April 2, 2007 Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 7, 2004, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 37-39). Plaintiff asserted that he became disabled on April 1, 2004, due to "injuries to [his] hands, shot in the legs, [and] arthritis in the hands and legs." (AR 37, 63). An Administrative Law Judge (the "ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on March 3, 2006.  (AR 215-52).

On May 4, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 16-22). Specifically, the ALJ found:  (1) plaintiff suffered from the following severe impairments:  status-post right hand fracture and right elbow injury, and status-post gunshot wound to both thighs (AR 18); (2) plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments (AR 18); (3) plaintiff could perform limited light work[1] (AR 21); (4) plaintiff could not perform his past relevant work (AR 20); and (5) there are jobs that exist in significant numbers in the national

///

---

[1]Specifically, the ALJ determined that plaintiff could: (i) lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; (ii) sit, stand and/or walk up to 6 hours out of an 8-hour workday; (iii) push and/or pull occasionally with the right upper extremity, right lower extremity and left lower extremity; (iv) push and/or pull frequently with the left upper extremity; (v) occasionally handle and finger with the right upper extremity; (vi) frequently handle and finger with the left upper extremity; (vii) occasionally walk on uneven terrain; (viii) occasionally stoop, kneel, crouch and crawl; (ix) occasionally climb stairs slowly, but could not climb ladders; (x) perform work that does not require exposure to heights, dangerous equipment or machinery; and (xi) perform work that does not require exposure to extreme cold or vibration to the upper extremities.  (AR 18).

economy that plaintiff could perform: inspector, sales attendant in a self service store, call out operator, and surveillance system monitor. (AR 21).

The Appeals Council denied plaintiff's application for review. (AR 4-6).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///
///

|   |     |                                                                                           |
|---|-----|-------------------------------------------------------------------------------------------|
|   | (4) | Does the claimant possess the residual functional capacity to perform his past relevant work?[2] If so, the claimant is not disabled. If not, proceed to step five. |
|   | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability). If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden by the testimony of a vocational expert. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. See Tackett, 180 F.3d at 1101; see also Robbins v. Social Security

---

[2] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

4

Administration, 466 F.3d 880, 886 (9th Cir. 2006) (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins, 466 F.3d at 882 (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

### IV. FACTS

As the ALJ pointed out in her decision, plaintiff's medical records do not show a history of regular doctor visits or ongoing treatment for plaintiff's asserted impairments. The record shows that plaintiff suffered a gunshot wound to both thighs on September 13, 1992, for which he underwent two surgeries. (AR 66, 89-90, 97-104). When plaintiff was discharged from the hospital following the

shooting and surgeries, his doctor diagnosed plaintiff with a gunshot wound to both thighs with significant short term destruction. (AR 93). Plaintiff's condition and prognosis on discharge were noted as "good," with plaintiff expected return to work in six weeks. (AR 93-94). A follow up clinic note from November 18, 1992, noted that plaintiff's disability period extended to six months from the date of the shooting. (AR 92). Plaintiff was discharged from the hospital with a walker and later prescribed a cane, as needed, in January 1993. (AR 91, 95).

On February 28, 2002, plaintiff was treated for an injury to his right upper forearm and elbow after having been hit with a baseball bat. (AR 107). His doctor prescribed Motrin for pain and ordered x-rays. (AR 107). In August 1999, plaintiff was treated for a right fifth metacarpal neck fracture from plaintiff punching a refrigerator. (AR 110-13).

Plaintiff asserted in his Disability Report that he could not grip anything. (AR 63). The record contains an Internal Medicine Evaluation by Dr. Khaledy dated January 19, 2005. (AR 119-22). Plaintiff presented with complaints of bilateral leg pain and numbness. (AR 119). Dr. Khaledy examined plaintiff and noted that plaintiff appeared "well developed," and had a grip strength of 40 pounds of force with his right and left hands. (AR 119). However, Dr. Khaledy also noted arthritic changes bilaterally in plaintiff's hands, with slow range of motion, tenderness, and decreased grip, and that plaintiff was unable to make a full fist with plaintiff's right hand. (AR 121). Dr. Khaledy observed limited range of motion in plaintiff's thoracolumbar spine, hips, and left knee, and a positive straight-leg raising test. (AR 121). Plaintiff did not require any assistive aids to ambulate across the room despite a loss of musculature in his hips and upper thighs. (AR 122).

Dr. Khaledy opined that plaintiff: (i) could lift and carry 50 pounds occasionally and 25 pounds frequently; (ii) could walk and stand up to six hours in an eight-hour day with normal breaks; (iii) could sit up to six hours in an eight-

hour day; (iv) did not require an assistive device to ambulate; (v) did not have any postural limitations; and (vi) was not limited in fine and gross manipulations.  (AR 122).

On May 23, 2005, state agency physician Dr. Friedman completed a Physical Residual Functional Capacity Assessment form which reflects that plaintiff:  (i) could occasionally lift 20 pounds and frequently lift 10 pounds; (ii) could stand/walk about six hours in an eight-hour day; (iii) could sit about six hours in an eight-hour day; (iv) could occasionally stand/walk on uneven terrain; (v) could occasionally push/pull with his right upper extremities and left lower extremities; (vi) could frequently push/pull with his left upper extremities; (vii) could frequently balance and stoop; (viii) could occasionally kneel, crouch and crawl; (ix) could never climb ropes or scaffolds, but could occasionally do other climbing; and (x) should avoid even moderate exposure to hazards.  (AR 129-136).  Dr. Friedman further noted that plaintiff was unlimited in his reaching in all directions (including overhead) and feeling, but limited in his handling and fingering in that plaintiff could only occasionally use his right hand for handling and fingering, but could frequently use his left hand.  (AR 137).

On July 30, 2005, state agency physician Dr. Michaelson also completed a Physical Residual Functional Capacity Assessment form concerning plaintiff's ability to reach, handle, finger and feel.  (AR 126).  Dr. Michaelson opined that plaintiff:  (i) could frequently work with both his arms/hands above and below shoulder level; (ii) could occasionally work with his arms/hands overhead; (iii) could frequently seize/grasp, flex or extend his wrists, turn, and grip, but only occasionally hold, and push or pull levers; (iv) could frequently "pick" and work primarily with his fingers, but only occasionally pinch; and (v) could frequently feel the size, temperature or texture of an object using his fingertips.  (AR 126).

///

On August 8, 2005, Dr. Friedman confirmed his earlier functional capacity assessment notwithstanding his consideration of additional evidence, including Dr. Michaelson's opinion and x-rays. (AR 141-42).

At the administrative hearing, plaintiff testified to the following: He had to stop working due to his inability to grip. (AR 221-22). His right leg was numb from his foot up to his calf from his earlier gunshot wound and he could not bend his leg. (AR 223). His feet swelled when he walked and he suffered burning pain in his left leg all the time from nerve damage. (AR 223, 225). He used a cane sometimes. (AR 226). He could not sit up in a chair for more than thirty minutes before his right leg would get numb. (AR 229). He could not make a fist with either of his hands due to his arthritis and having broken both hands previously. (AR 224-25). His hands hurt every day. (AR 225). He had arthritis pain in his hands and in his hip and knee where he had a rod in place. (AR 228-29). He could not lift like he did before, or tie his shoes, or open a potato chip bag, because he could not grip. (AR 226-27). His problems were gripping "little things" – "like something you have to just really grip with your fingers." (AR 227).

## V. DISCUSSION

### A. A Remand Is Appropriate Because the ALJ Erroneously Failed to Address a State Agency's Physician's Opinion and This Court Cannot Find That Such Error Was Harmless

Plaintiff contends that the ALJ's decision cannot withstand judicial scrutiny because the ALJ ignored the opinion of state agency physician Dr. Michaelson, who opined that plaintiff had greater limitations than those found by the ALJ, who instead, adopted the opinion of state agency physician Dr. Friedman. (Plaintiff's Motion at 4-5). This Court agrees that the ALJ erred in failing to address Dr. Michaelson's opinion and cannot find that such error was harmless.

///

### 1. Pertinent Law

An ALJ is not bound by any findings by a state agency medical consultant. 20 C.F.R. § 416.927(f)(2)(i). However, because these agency physicians are highly qualified and are also experts in Social Security disability evaluations, the ALJ "must consider" findings of an agency physician. 20 C.F.R. § 416.927(f)(2)(i). When the ALJ considers the findings of a state agency medical consultant, the ALJ evaluates the findings using factors such as medical specialty and expertise in social security rules, supporting evidence in the case record, supporting explanations provided by the physician, and any other factors relevant to the weighing of the opinions. 20 C.F.R. § 416.927(f)(2)(i). Furthermore, the ALJ "must explain in the decision" the weight given to the agency physician's opinion. See SSR 96-6p (ALJ may not ignore state agency physician's opinions and must explain weight given to such opinions in their decisions).

### 2. Analysis

Here, the ALJ's decision indisputably ignored the opinion of state agency physician Dr. Michaelson and failed to explain the weight, if any, given to such opinion. As the foregoing authorities suggest, this constitutes error. This Court cannot find such error was harmless because consideration of Dr. Michaelson's opinion could have impacted whether additional restrictions should have been included in the residual functional capacity assessment, thereby potentially altering the ALJ's disability determination.

For ease of reference, the court sets forth below the pertinent opinions offered by Drs. Michaelson and Dr. Friedman, as well as the limitations adopted by the ALJ.

///
///
///
///

|  | Dr. Michaelson (AR 126) | Dr. Friedman (AR 130, 137) | ALJ (AR 18) |
|---|---|---|---|
| Reaching – Work with arm/hand at or below shoulder level? | Frequently | Unlimited | No limitations noted |
| Reaching – Work with arm/hand above shoulder level? | Frequently | Unlimited | No limitations noted |
| Reaching – Work with arm/hand overhead? | Occasionally | Unlimited | No limitations noted |
| Handling – Seize/grasp? | Frequently | Left – Frequently Right – Occasionally | Left – Frequently Right – Occasionally |
| Handling – Hold? | Occasionally | Left – Frequently Right – Occasionally | Left – Frequently Right – Occasionally |
| Handling – Flex or extend the wrist? | Frequently | Left – Frequently Right – Occasionally | Left – Frequently Right – Occasionally |
| Handling – Turn? | Frequently | Left – Frequently Right – Occasionally | Left – Frequently Right – Occasionally |
| Handling – Push and pull levers | Occasionally | Left Upper Extremity – Frequently Right Upper/Left Lower Extremities – Occasionally | Left Upper Extremity – Frequently Right Upper and Lower/Left Lower Extremities – Occasionally |
| Handling – Grip strength | Frequently | Left – 40 Right – 40 | Left – Frequently Right – Occasionally |
| Fingering – Pick? | Frequently | Left – Frequently Right – Occasionally | Left – Frequently Right – Occasionally |
| Fingering – Pinch? | Occasionally | Left – Frequently Right – Occasionally | Left – Frequently Right – Occasionally |
| Fingering – Work primarily with the fingers? | Frequently | Left – Frequently Right – Occasionally | Left – Frequently Right – Occasionally |
| Feeling – Feel size, temperature or texture of object using fingertips? | Frequently | Unlimited | No limitations noted |

As noted above, the ALJ adopted fewer limitations than suggested by Dr. Michaelson's opinion as to reaching, handling/holding with the left hand, handling/pushing and pulling levers with the left upper extremity, fingering/pinching with the left hand, and feeling.  Thus, the opinion of Dr. Michaelson, if adopted, may well have resulted in additional functional limitations being incorporated into the ALJ's residual functional capacity assessment.  This in turn could have impacted the opinion of the vocational expert, upon whom the ALJ relied in finding that plaintiff could work as an inspector, a sales attendant in a self service store, a call out operator, and a surveillance system monitor.  (AR 21).  Although the ALJ might nonetheless have chosen to adopt Dr. Friedman's opinions over those of Dr. Michaelson, this Court cannot conclude that she necessarily would have done so.

As the ALJ erred in failing expressly to address the opinion of Dr. Michaelson, and as this Court cannot find that such error was harmless, this matter should be remanded.

**VI.   CONCLUSION**[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   September 25, 2008                    /s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court need not, and has not adjudicated plaintiff's other challenge to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[4] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).